ATTORNEY GENERAL *vs.* CITY OF WOBURN.

Suffolk.     December 2, 1947. — April 30, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & SPALDING, JJ.

*Public Health. Aberjona River. Municipal Corporations, Sewer, Aberjona River. Water. Statute, Supersedure. Words, "Person," "Corporation."*

St. 1911, c. 291, relating to prohibiting the entrance or discharge into the Aberjona River or its tributaries of sewage or other matter injurious to the public health or tending to create a public nuisance, has not been superseded by G. L. (Ter. Ed.) c. 111, § 5, as amended, but is supplemented by it.

A municipality maintaining a sewer in the vicinity of the Aberjona River or its tributaries is subject to the provisions of St. 1911, c. 291, respecting orders of the State department of public health designed to prevent the entrance or discharge into the river or its tributaries of sewage or other matter injurious to the public health or tending to create a public nuisance and respecting the enforcement of such orders in equity.

In a proceeding in equity against a city under St. 1911, c. 291, to enforce orders given by the State department of public health to the city to cease polluting the Aberjona River, a decree for the plaintiff was supported by evidence that a sewer maintained by the city in the vicinity of the river overflowed many times, whereby sewage and other putrescible matter from the sewer entered and polluted the river, created a condition injurious to the public health and caused the emission of offensive odors from the river.

INFORMATION IN EQUITY, filed in the Superior Court on June 20, 1946.

The case was heard by *Hanify*, J.

In this court the case was submitted on briefs.

*J. Gorrasi,* City Solicitor, for the defendant.

*C. A. Barnes,* Attorney General, & *A. E. LoPresti,* Assistant Attorney General, for the plaintiff.

SPALDING, J.    This is an information brought by the Attorney General at the request of the department of public health seeking to enjoin the city of Woburn from polluting the Aberjona River.    From a decree granting the relief sought, the defendant appealed.[1]    The evidence is reported. The judge made no findings of fact, but his decree in favor of the plaintiff imports a finding of every fact essential to support it.    It is our duty to decide the case according to our own judgment of the evidence, giving due weight to the findings implied in the decree of the trial judge.    *Berry* v. *Kyes,* 304 Mass. 56, 57.    *Artemis* v. *Malvers, ante,* 136, 137.

The evidence warrants the following findings: The Aberjona River rises in the northwesterly part of the town of Reading and flows through Woburn and thence into Winchester where it joins the upper Mystic Lake, of which it is the "main feeder."    The river has several tributaries.    A considerable portion of the upper Mystic Lake is maintained by the metropolitan parks division as a recreational center, one of the chief attractions of which is a public bathing beach.    The city of Woburn, hereinafter called the city, approximately twenty years prior to the events giving rise to the present controversy, constructed a sewer which extends from North Woburn in the valley of the Aberjona River to a point near the Winchester–Woburn–Stoneham boundary line where it joins the metropolitan sewerage system.    In the area through which the sewer runs are numerous industrial plants, mainly tanneries, which are connected with it.    At times the sewer has not been adequate to take care of the sewage flowing into it, and it has overflowed at the manholes.    When this occurred, as it has many times, the overflow would run off into the Aberjona River or one of its tributaries.    This overflow, which consisted of sewage, animal hair, fleshings and other putrescible

---

[1] The decree provided "That the City of Woburn, . . . its officers, servants, agents and employees be, and they hereby are, enjoined from discharging any sewage or wastes containing any putrescible organic matter or other deleterious substances into the Aberjona River or any tributary thereof."

matter, caused the river to be polluted, and created a condition injurious to the public health. It has also caused offensive odors to be emitted from the river. Orders to cease polluting the river were given to the city by the department of public health.

This information was brought under St. 1911, c. 291, and G. L. (Ter. Ed.) c. 111, § 5, as amended by St. 1945, c. 615, to enforce these orders. The position of the city is that neither of these statutes is applicable to it, a municipal corporation. The city further contends that St. 1911, c. 291, was superseded by G. L. (Ter. Ed.) c. 111, § 5, as amended, and that if this statute should be held to apply to a municipal corporation the evidence fails to show that it has been violated.

The provisions of St. 1911, c. 291, a special act, are set forth in the footnote. [1] We are of opinion that this statute was not superseded by G. L. (Ter. Ed.) c. 111, § 5, as amended by St. 1945, c. 615. Section 5 in its present form, after providing that the department of public health shall from time to time prescribe and establish rules and regulations to prevent pollution or contamination of any or all of the lakes, ponds, streams, tidal waters and flats within the Commonwealth, states "that nothing contained herein shall affect other powers and duties of the department as defined by any general or special law." It is plain that the Legisla-

---

[1] "An Act to provide for the protection of the public health in the vicinity of the towns of Winchester and Stoneham and the city of Woburn. Section 1. The state board of health is hereby authorized and directed to prohibit the entrance or discharge of sewage into any part of Aberjona river, or its tributaries, and to prevent the entrance or discharge therein of any other substance which might be injurious to public health or might tend to create a public nuisance. Section 2. The board shall consult and advise with the owner of any factory or other establishment situated on or near the said river or any of its tributaries, at his request or of its own motion, as to the best practicable and reasonably available means of rendering the waste or refuse therefrom harmless. Section 3. The supreme judicial court or any justice thereof, and the superior court or any justice thereof, shall have jurisdiction in equity to enforce the provisions of this act, and any order made by the state board of health in conformity therewith. Proceedings to enforce any such order shall be instituted and prosecuted by the attorney-general upon the request of the state board of health. Section 4. Whoever permits the entrance or discharge into any part of Aberjona river, or its tributaries, of sewage or of any other substance injurious to public health or tending to create a public nuisance shall be punished by a fine not exceeding five hundred dollars for each offence. Section 5. This act shall take effect on the first day of July in the year nineteen hundred and eleven."

ture intended § 5 to supplement, rather than to replace, St. 1911, c. 291.

A question of more difficulty is whether this statute applies to a municipality. We recognize, as the defendant has argued, that where a statute uses the word "person" or "corporation" it has usually been construed in our decisions not to include a city or town. *Donohue* v. *Newburyport*, 211 Mass. 561, 566–569, and cases cited. *O'Donnell* v. *North Attleborough*, 212 Mass. 243. *Howard* v. *Chicopee*, 299 Mass. 115, 121. The statute under consideration, however, does not use either of these words. In § 1 the State board of health [1] is "hereby authorized and directed to prohibit the entrance or discharge of sewage into any part of Aberjona river, or its tributaries, and to prevent the entrance or discharge therein of any other substance which might be injurious to public health or might tend to create a public nuisance." Thus the board is authorized and directed to prohibit absolutely the discharge into the river of matter injurious to public health, irrespective of the source of the matter or who discharged it. If the statute ended there we should have little doubt that it applied to municipalities as well as private persons and corporations. But in § 4 it is provided that "Whoever" violates the statute shall be subject to a fine. See G. L. (Ter. Ed.) c. 4, § 7, Twenty-third, which provides that the word "whoever" when used in our statutes shall, unless a contrary intention clearly appears, "include corporations, societies, associations and partnerships," and which does not mention cities and towns. It may be that a municipality would not be subject to the penal provisions of the act, but that question does not arise here. We are of opinion, however, that the statute read as a whole manifests an intention to include municipalities within, at least, its nonpenal provisions. Cities and towns are quite as capable of causing the mischief which the statute is designed to prevent as are private persons and corporations. Manifestly the purpose of the legis-

---

[1] Statute 1914, c. 792, created the State department of health which was given all the powers and duties conferred and imposed by law upon the State board of health. By St. 1919, c. 350, § 96, the State department of health became the department of public health.

lation is the protection of public health.  The attainment of this object would hardly be possible if cities and towns were free to discharge sewage and other objectionable matter into the river.  We need not decide whether the present proceedings could also be maintained under G. L. (Ter. Ed.) c. 111, § 5, as amended.  It is enough for present purposes to decide that St. 1911, c. 291, afforded authority for them and for the decree which was entered in the court below. The decree was amply supported by the evidence.

*Decree affirmed with costs.*