MICHAEL J. MURTAGH *vs.* REGISTRARS OF VOTERS OF
PEABODY & another.

Essex.     April 6, 1960. — April 28, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Elections.*

A proceeding for a writ of mandamus to require certification of the petitioner's election as mayor of a city at a municipal election was rightly dismissed where it appeared that the petitioner had received the second highest number of votes for that office and that, although at the time of the election the candidate who received the highest number of votes was a member of the Alcoholic Beverages Control Commission, he was not, to the general knowledge of everybody concerned, thereby ineligible for the office of mayor. [738–739]

*Madden* v. *Election Commrs. of Boston,* 251 Mass. 95, discussed. [738–739]

PETITION for a writ of mandamus filed in the Supreme Judicial Court for the county of Essex on December 7, 1959.

Upon transfer to the Superior Court the case was heard by *Noonan,* J.

*James A. Liacos,* for the petitioner.

*Edward O. Proctor,* (*Abraham Ankeles,* City Solicitor, with him,) for the respondents.

WILKINS, C.J.   At a municipal election in the city of Peabody on November 3, 1959, the respondent Philip C.

O'Donnell, a candidate for re-election to the office of mayor, received 7,374 votes and the petitioner 6,689 votes. Thereafter, the petitioner unsuccessfully asked the respondent board of registrars of voters to certify his election. The ground of objection was that on June 12, 1959, the respondent O'Donnell had been appointed a member of the Alcoholic Beverages Control Commission. See G. L. c. 6, § 43 (as amended through St. 1950, c. 785), § 44 (as amended through St. 1933, c. 376, § 1); c. 138. This petition for a writ of mandamus to require the petitioner's certification as mayor was heard by a judge of the Superior Court and dismissed. The petitioner's appeal is subject to the practice in equity. *Rothenberg* v. *Boston Housing Authy.* 335 Mass. 597, 599. There were no findings. The evidence is reported. G. L. c. 213, § 1D (as amended through St. 1957, c. 155).

The petitioner contends that the two offices are incompatible; that by accepting the office as member of the commission the respondent O'Donnell resigned the office of mayor; and that the petitioner as the only legally qualified candidate was elected mayor. We shall pass directly to the last of the above contentions, which is that the petitioner, who finished second, was nevertheless elected.

The petitioner relies in large part upon *Madden* v. *Election Commrs. of Boston*, 251 Mass. 95, the principle of which this court has shown no inclination to extend. There have been two later cases. *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 280. *Greenwood* v. *Registrars of Voters of Fitchburg*, 282 Mass. 74. In the *Greenwood* case, at page 80, the *Madden* case was distinguished in these words: "In that case the respondents had done the utterly futile act of issuing a certificate to the effect that a man, who to the general knowledge of everybody concerned had died before the day of election, had been elected. Such certificate was an absolute nullity as matter of law." This would be enough to distinguish the present case. The *Madden* principle, even if accepted as valid, still could not be successfully stretched to aid the petitioner. On that theory, it would be decisive that the trial judge was not plainly wrong in finding, as he

did by implication in dismissing the petition, that the respondent O'Donnell was not, to the general knowledge of everybody concerned, ineligible for the office of mayor. It had never been judicially determined that the two offices were incompatible, and some of the political advertising in the campaign argued that while it was poor policy to elect a member of the commission to be mayor, there was no law against it.

We feel that a precautionary word should be added as to the *Madden* case, which is contrary to the great preponderance of American authority. See cases collected in note in 133 A. L. R. 319. In our opinion it fails to give proper weight to the negative value of a vote for the dead man. According to that decision, a dilemma confronted the voters. Those who wished to defeat Madden, of course, would not vote for him. By voting for the dead man they were held to have thrown their votes away. The only alternative would have been to organize a write-in or sticker candidacy on one day's notice.

*Judgment affirmed.*