STANLEY B. STARR *vs.* BOARD OF HEALTH OF CLINTON.

Worcester. October 7, 1969. — December 1, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Municipal Corporations,* Officers and agents. *Conflict of Interest. Sale,* What constitutes, Sale of business. *Civil Service. Veteran. Practice, Civil,* Entry of judgment, Appeal. *Mandamus.*

An appointment by a town's board of health of one of its members to the position of plumbing inspector, not authorized by a vote of the town under G. L. c. 41, § 4A, would have been invalid. [428–429]

The ownership of a retail plumbing supply business by a town's plumbing inspector would at least present an appearance of conflict of interest under G. L. c. 268A. [429]

Evidence warranted a conclusion that a purported sale to a relative of a retail plumbing supply business by one seeking appointment as a town plumbing inspector was not a bona fide sale and did not divest the purported seller of all interest in the business. [430]

The fact that one seeking appointment as a town plumbing inspector was a disabled veteran placed number one on a civil service list for the position did not preclude the town's board of health, the appointing authority, from refusing to appoint him on the ground of apparent conflict of interest arising from his ownership of a retail plumbing supply business. [430–431]

Upon appeal from the judgment in a mandamus case, with a report of the evidence but no stated findings by the judge, findings of all the facts essential to support the judgment were imported and were entitled to be given due weight by this court in deciding the case. [431]

PETITION IN EQUITY filed in the Superior Court on September 14, 1964.

The case was heard by *Thompson, J.*

*Terence F. Riley* for the petitioner.

*Morris N. Gould* (*Thomas F. McEvilly* with him) for the respondent.

SPIEGEL, J. This petition for mandamus seeks to compel the board of health (board) "to appoint and certify . . . [the] petitioner to the office and duties of Plumbing Inspector for the Town of Clinton." A judge of the Superior Court ordered judgment dismissing the petition. The petitioner appealed from the judgment. The trial judge made no findings but the evidence is reported.

We state facts which the judge could have found. On July 12, 1963, the petitioner, a member of the board, took the civil service qualifying examination for the position of plumbing inspector. He was notified, on January 13, 1964, that he had passed, and was placed number one on the civil service list because of his status as a disabled veteran. At the February meeting of the board, the petitioner "made a motion that action be taken on the appointment of a plumbing inspector." The motion was tabled in order to allow the other members of the board additional time to study the candidates on the civil service list.

Following this meeting the other members of the board, one Peter O'Malley, and one Harold Alzapiedi, the chairman, in accordance with G. L. c. 268A, § 22, requested the town counsel, Mr. Edward T. Mitchell, to rule "on the prospective appointment of . . . [the petitioner] as Plumbing Inspector, and the possibility of such appointment constituting a conflict of interest." In a letter dated February 25, 1964, Mr. Mitchell indicated that both the petitioner's position as a member of the board and his ownership of a retail plumbing supply business constituted conflicts of interest which were direct impediments to the petitioner's appointment.

The petitioner, in an effort to evade the conflicts described in the town counsel's letter, purportedly sold his plumbing supply business to his brother, Stephen J. Starr, for the nominal sum of $1. At the board meeting held on March 4,

1964, the petitioner placed a bill of sale for his business and his resignation from the board on a table in the board office. The bill of sale was examined by Mr. Mitchell, O'Malley (newly elected chairman), and a new member of the board, one Saverio Notaro. Because the petitioner chose to transfer the business to his brother, Mr. Mitchell suggested he file an affidavit stating that he would have no future affiliation with his plumbing supply business. O'Malley did not accept or look at the petitioner's resignation. The petitioner "picked . . . [the bill of sale and the resignation] up off the desk and put . . . [them] back in his pocket . . . [a]nd . . . did not request any formal action." O'Malley and Notaro agreed to give the petitioner one day to present an affidavit to the board. On March 5, 1964, the petitioner again appeared before the board and O'Malley told the petitioner of his dissatisfaction with the bill of sale and stated that even if the petitioner resigned he "could not in good conscience vote for . . . [the petitioner] because . . . [he] felt there is still a conflict of interest, since . . . [the petitioner had been] a member of this Board."

The minutes of the board meeting do not show that the petitioner submitted a formal resignation to the board until receipt of the letter dated June 9, 1964.

1. The petitioner contends that G. L. c. 41, § 4A,[1] is not a bar to his appointment as plumbing inspector because he "had resigned and could not participate in his own appointment." However, he did not officially tender his resignation to the board until June 9, 1964. He had previously offered to resign on the condition that he be appointed to the plumbing inspector's position. The impetus for his ultimate resignation stemmed from a meeting on June 8, 1964, with W. Henry Finnegan, Director of Civil Service for the Commonwealth. At that meeting Finnegan made it clear that the petitioner's resignation from the board and

---

[1] As amended through St. 1951, c. 6. The relevant portion of G. L. c. 41, § 4A, reads as follows: "Except as otherwise expressly provided, a town board may, if authorized by vote of the town, appoint any member thereof to another town office or position for the term provided by law, if any, otherwise for a term not exceeding one year."

his divestment of any interest in the plumbing supply business were conditions precedent to his appointment to the position of plumbing inspector. The petitioner at all relevant times prior to his resignation was a member of the board and therefore could not have been appointed plumbing inspector by the board.[2] *Mastrangelo* v. *Board of Health of Watertown*, 340 Mass. 491. See *Barrett* v. *Medford*, 254 Mass. 384; *Attorney Gen.* v. *Henry*, 262 Mass. 127.

2. The petitioner also claims that his plumbing supply business does not present a conflict since "[t]he appointed job deals with inspecting plumbers' work . . . [and the] supply business deals with the *public* on retail sales." As we stated in the case of *Selectmen of Avon* v. *Linder*, 352 Mass. 581, 583, the conflict of interest law[3] was enacted "as much to prevent giving the appearance of conflict as to suppress all tendency to wrongdoing." The petitioner's retention of the plumbing supply business while serving as plumbing inspector would, it seems obvious, give the appearance of a conflict.

3. The petitioner argues that the question of conflict of interest is "moot since he has sold the business and submitted his [b]ill of [s]ale with the resignation." We do not agree. On July 9, 1964, the business was purportedly sold to one Jack D. Pelley, the petitioner's brother-in-law, for $3,300; the deposit was made by a cashier's check for $1,300 and the balance by a promissory note from Pelley to the petitioner for $2,000. Pelley, a linotype operator, claims that at the time of the supposed purchase, he borrowed $800 cash from his father-in-law, the petitioner's father, to

---

[2] G. L. c. 268A. Section 21A of this chapter (added by St. 1967, c. 887, § 2), although enacted subsequent to the events here relevant, supports the position taken by the town counsel and the board. The section reads as follows: "Except as hereinafter provided, no member of a municipal commission or board shall be eligible for appointment or election by the members of such commission or board to any office or position under the supervision of such commission or board. . . . The provisions of this section shall not apply to a member of a town commission or board, if such appointment or election has first been approved at an annual town meeting of the town."
     The legislative purpose behind the enactment of this provision seems to confirm the purpose which was contained in G. L. c. 41, § 4A.

[3] See, generally, G. L. c. 268A.

make the down payment on the business. Pelley also claims that he acquired the business for investment purposes, because he had failing eyesight and would have to leave his position as a printer. The "purchase" of the business was to be the eventual means by which he would support his family. At this time, Pelley was earning approximately $7,000 a year. Yet, after the "purchase" of the supply business, the gross receipts a week for the period June 13, 1964, to October 17, 1964, were never greater than $64.16 and were as low as $14.20 for the week of August 1, 1964. From the total gross receipts of approximately $600 during Pelley's ownership, he paid his father-in-law $200 on account of the $800 loan and he paid the petitioner $250, $50 a month, in rent. During the five month period Pelley claimed to have operated the business, he "paid out $450" out of an income of approximately $600, and had not expended any funds to replenish the merchandise sold during that period.

The petitioner claims that prior to the sale to Pelley he sold the business to his brother, but that his brother became a "little skeptical" about the petitioner's securing the appointment of plumbing inspector, and that some three or four weeks after the purported sale the petitioner "reacquired" the business. The petitioner also claims that after "reacquiring" the business he attempted to sell it to other prospective customers. However, he was unable to recall any of their names. From the foregoing the judge could have concluded that the petitioner did not make a bona fide sale and did not properly divest himself of his plumbing supply business.

4. We do not agree with the argument of the petitioner that *Younie* v. *Director of Div. of Unemployment Compensation*, 306 Mass. 567, 571, supports his contention that under G. L. c. 31, § 23,[4] once "[a] disabled veteran . . . [has]

_____

[4] As amended through St. 1954, c. 627, § 5. Section 23, as thus amended, reads, "The names of persons who pass examinations for appointment to any position classified under the civil service shall be placed upon the eligible lists in the following order: — (1) Disabled veterans as defined in section twenty-three A, in the order of their respective standing; (2) veterans in

been certified for appointment, the appointing power . . . [can] not decline to appoint him." As we stated in *Commissioner of the Metropolitan Dist. Commn.* v. *Director of Civil Serv.* 348 Mass. 184, 192, the *Younie* case raised "[n]o issues relating to moral fitness and character . . . and we do not construe the quoted language as having reference to such issues." We also stated in that case that "under § 23 an appointing authority has the power and duty to protect the public interest in having only public officers and employees of good character and integrity and may refrain from appointing a disabled veteran in preference to others where there are reasonable grounds to regard that veteran's character or past conduct as rendering him unfit and unsuitable to perform the duties of office." *Commissioner of the Metropolitan Dist. Commn.* v. *Director of Civil Serv., supra*, 193.

There was ample justification for the dismissal of the petition. Since the judge has made no findings of fact, the judgment dismissing the petition imports a finding of every fact essential to support it. *Murtagh* v. *Registrars of Voters of Peabody*, 340 Mass. 737. See *Attorney Gen.* v. *Woburn*, 322 Mass. 634, 635. In any event, "[i]t is our duty to decide the case according to our own judgment of the evidence, giving due weight to the findings implied in the . . . [judgment]." *Attorney Gen.* v. *Woburn, supra*, 635. We are of opinion that the board acted properly in refusing to appoint the petitioner to the position of plumbing inspector.

*Judgment affirmed.*

---

the order of their respective standing; (3) persons described in section twenty-three B [not here applicable] in the order of their respective standing; (4) other applicants in the order of their respective standing. . . . A disabled veteran shall be appointed and employed in preference to all other persons, including veterans."