AUGUSTUS P. CHARBONNIER & others *vs.* PAUL F. AMICO, trustee, & others.

Suffolk.    December 6, 1974. — March 14, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Pleading, Civil,* Complaint.    *Practice, Civil,* Motion to dismiss.    *Environmental Affairs.    Conflict of Interest.*

In a suit by a citizens group seeking an injunction against a redevelopment of an urban renewal parcel for a car wash on the grounds that an environmental impact study for the parcel had not been filed and that the selection of the proposed redeveloper violated certain provisions of G. L. c. 268A, the conflict of interest statute, although the allegations in the complaint in support of the grounds for relief were faulty and a demurrer to the complaint had been sustained and a motion to amend denied, this court, in view of the circumstance that the demurrer, conventional in form, was sustained without a statement of reasons and of the change in pleading requirements evidenced in the new rules of civil procedure, reversed a final decree dismissing the bill and gave the plaintiffs leave to file an amended complaint. [150-154]

BILL IN EQUITY filed in the Superior Court on April 24, 1973.

The suit was heard by *Cross,* J., on demurrer.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Thomas G. Shapiro* for the plaintiffs.

*William L. Kendrick, Jr.,* for Boston Redevelopment Authority.

*Paul F. Amico,* trustee, pro se.

*Gerard A. Powers*, Assistant Corporation Counsel, for the city of Boston, submitted a brief.

KAPLAN, J.    In this suit commenced in the Superior Court for the county of Suffolk, the judge entered interlocutory decrees sustaining the defendants' demurrers to the plaintiffs' bill in equity,[1] and, after denying the plaintiffs' motion to amend their bill,[2] he entered on November 20, 1973, a final decree dismissing the bill, from which the plaintiffs take their appeal.   The essential question for review, expressed in the terminology of the Massachusetts Rules of Civil Procedure effective July 1, 1974,[3] is whether the complaint states a claim upon which relief can be granted, that defense having been presented by the defendants' motions to dismiss.   Rule 12 (b) (6), 365 Mass. 754.

Through the excessively adjectival allegations of the complaint,[4] the plaintiffs' story emerges as follows.

The plaintiffs (appellants here), eleven in number, are residents of the Charlestown area of Boston and members of an unincorporated association called "Concerned Citizens of Charlestown."    They complain of three named defendants (appellees here), Paul F. Amico, as

---

[1] The defendants also answered, but as the bill was vague at essential points (see below) the answers were not substantially informative.

[2] Appeal was not noted from the denial of this motion.   See *Povey* v. *School Comm. of Medford*, 333 Mass. 70, 73 (1955).

[3] In the circumstances, we apply on this appeal the tests with respect to the sufficiency of the pleading that are embodied in the new Rules.   See Mass. R. Civ. P. 1A, par. 3, 365 Mass. 731 (1974), and the parallel Mass. R. App. P. 1A, 365 Mass. 845 (1974), both entitled, "Transitional Rule for Litigation in Progress on July 1, 1974."

[4] The pleader might have taken to heart Chief Justice Wilkins's remarks in *Moskow* v. *Boston Redevelopment Authy.* 349 Mass. 553, 562 (1965), cert. den. 382 U. S. 983 (1966), that nothing is added to a pleading by "words of belligerence," and that "rhetoric is not an adequate substitution for allegations."

trustee of the "Piemonte Family Trust," the Boston Redevelopment Authority (B. R. A.), and the city of Boston.

For a considerable period of time prior to the events in suit, a corporation, Downtown Auto Parks, Inc., doing business under the name, "One Two Three Car Wash," owned and operated a car wash located at 294 Causeway Street in Boston. As of 1970, Evelyn P. Piemonte was the president, Gabriel F. Piemonte the treasurer, and Paul F. Amico the clerk, of the corporation. In December, 1970, the city of Boston acquired the car wash premises by eminent domain.

Much earlier, in 1965, B. R. A. had designed an urban renewal plan for Charlestown which was approved by the mayor and city council of Boston and in that connection a "cooperation agreement" was entered into between B. R. A. and the city. The renewal plan is in process of being carried to completion. In August, 1971, B. R. A. advertised the availability of a certain parcel "C-2A1" (the complaint places it in Charlestown, but without more exact location) for redevelopment as a commercial site. That month the Downtown corporation informed B. R. A. of its interest in relocating and in becoming the redeveloper of the parcel. Subsequently Evelyn P. Piemonte and Gabriel F. Peimonte submitted a proposal, which was later amended to name as the proposed redeveloper only Amico, as trustee of the Piemonte Family Trust, which is alleged to be a trust for the benefit of the grandchildren of Gabriel F. Piemonte. The proposal was for a car wash. The projected transaction aroused the opposition of the plaintiffs, among other local residents, because in their opinion the site was inappropriate for the proposed use. This view was communicated to B. R. A. Nevertheless B. R. A. voted on September 7, 1972, to designate Amico, as trustee, as redeveloper. The decision was advertised on November 8, 1972. Boston Redevelopment Authority withheld further action because of the continued protests of the

"Concerned Citizens," but, evidently after hearing them, it voted on April 5, 1973, to reaffirm the designation of Amico.

Searching for the sting of illegality in the allegations of the complaint, we find it suggested in two ways.[5] There is an allegation that "[t]he Urban Renewal Planners of Project R55 [for Charlestown] at no time filed an environmental impact study and a negative statement was never filed prior to commencing redevelopment activities in this area." The complaint also refers to the conflict of interest statute, G. L. c. 268A, and alleges that Gabriel F. Piemonte was at relevant times a member of the Boston city council, prohibited by § 20 (a), a criminal provision, from knowingly having a "financial interest, directly or indirectly" in a "contract" made by a municipal agency of the same city.[6] Filed in April, 1973, shortly after B. R. A. finally designated Amico as redeveloper, the complaint prayed injunctive relief against this projected use of the parcel, and for good measure demanded damages against the defendants "individually and severally . . . for the time and expenses . . . [the plaintiffs] have incurred to prevent this harmful and unlawful relocation."[7]

---

[5] See the preferred form of setting forth multiple claims (Rule 10 [b], 365 Mass. 752) or multiple statements of a single claim (Rule 8 [a] [2], 365 Mass. 749).

[6] Section 20 (a), as appearing in St. 1962, c. 779, § 1, states in part: "A municipal employee who has a financial interest, directly or indirectly, in a contract made by a municipal agency of the same city or town, in which the city or town is an interested party of which financial interest he has knowledge or has reason to know, shall be punished by a fine of not more than three thousand dollars or by imprisonment for not more than two years, or both."
As to the broad scope given "contract," see *Conley* v. *Ipswich*, 352 Mass. 201, 202-204 (1967). That an elected official of a city is a "municipal employee" within the statute, see the *Conley* case, *supra*, at 205; *Selectmen of Avon* v. *Linder*, 352 Mass. 581, 583 (1967).

[7] There is a prayer that B. R. A. be enjoined from the use of the parcel "in such a way that would violate the letter and spirit of redevelopment in Charlestown" but this is not elaborated as a

The complaint is notably thin in its substance, as the judge may well have found in sustaining the demurrers. With respect to the abrupt allegation about "environmental impact," the plaintiffs in their argument mentioned the National Environmental Policy Act of 1969, effective January 1, 1970 (P. L. 91-190, 83 Stat. 852, codified as 42 U. S. C. §§ 4321, 4331-4335, 4341-4347 [1970]). It appears on the face of the complaint that the basic renewal plan long antedated the statute, and there are no averments that the particular proposal here in question, or any segment of the plan embracing the proposal, is so distinct from the plan as a whole and its performance so timed as to require separate treatment under the statute. Cf. *Jones* v. *Lynn*, 477 F. 2d 885 (1st Cir. 1973). Nor does the complaint indicate what the Federal involvement in the relevant part of the plan is supposed to be that would bring the statute into play. We may pretermit the question of a need to join the interested Federal agencies when the statute applies and is invoked.[8] The plaintiffs also referred in argument to the State Environmental Policy Act (St. 1972, c. 781, § 2, codified as G. L. c. 30, §§ 61-62), of which the section requiring the filing of environmental impact statements, G. L. c. 30, § 62, became effective July 1, 1973. The matter of the timing of performance is here also to the fore; not only the basic renewal plan but even the particular proposal and, indeed, the present suit, antedated § 62, and there are no saving averments in the complaint. See *Boston* v. *Massachusetts Port Authy.* 364 Mass. 639, 659-661 (1974). Cf. *Secretary of Environmental Affairs* v. *Massachusetts Port Authy.* 366 Mass. 755 (1975).

---

separate grievance. It is not asserted or argued, for example, that the proposal for this parcel departs so far from any agreed plan for Charlestown's renewal that fresh approval by the mayor and council is required.

[8] *Silva* v. *Romney*, 473 F. 2d 287 (1st Cir. 1973), cited by the plaintiffs, is not dispositive of this question in their favor.

With regard to conflict of interest, under the provisions of G. L. c. 268A, § 21 (a), which allow a private action to rescind a transaction by a municipal agency infected by a violation of § 20 (a), that violation must have "substantially influenced" the action taken by the municipal agency in the particular matter.[9]   This is a significant part of the gravamen, see *Crall* v. *Leominster*, 362 Mass. 95, 106 (1972), but the present complaint does not include such an allegation.[10]   To return to § 20 (a) (quoted at n. 6 above), there is also a difficulty in the present case in making out the requisite "financial interest" in the municipal employee.   A trust described as one for the employee's grandchildren is not on its face a financial interest of the employee, direct or indirect (compare the situation in *Starr* v. *Board of Health of Clinton*, 356 Mass. 426, 429-430 [1969]),[11] and if the

_____

[9] The text of G. L. c. 268A, § 21 (a), is:   "In addition to any other remedies provided by law, any violation of section two, three, eight, or sections fifteen to twenty, inclusive, which has substantially influenced the action taken by any municipal agency in any particular matter shall be grounds for avoiding, rescinding or cancelling the action on such terms as the interest of the municipality and innocent third persons require."

The "other remedies provided by law" include that provided by § 21 (b) which gives the city or town a civil remedy.   And as noted, violation of § 20 (a) is a penal offense.

[10] The only allegation bearing on the plaintiffs' "standing" to assert the conflict of interest under § 21 (a) is their residence in Charlestown.   In our recent decision regarding § 21 (a) in *Everett Town Taxi, Inc.* v. *Aldermen of Everett*, 366 Mass. 534 (1974), the private plaintiffs could be said to suffer in a competitive sense as a result of the transaction tainted by the supposed conflict of interest.

[11] A sidelight is thrown on this point by § 19 (a) which (overlooking certain details) punishes a municipal employee who in his role as such employee participates in a matter in which to his knowledge he or "his immediate family" has a financial interest.   "Immediate family" is defined by § 1 (e) as meaning "the employee and his spouse, and their parents, children, brothers and sisters."   Grandchildren are not named.   (Section 19 [a] is mentioned in the present complaint but there is no indication as to "participation" by Gabriel F. Piemonte.)

Difficulties like those encountered in satisfying § 20 (a) reappear in any attempt by the plaintiffs to support their claim by reference to a

pleader meant to charge that the trust was a fraudulent pretense on the employee's part, as an oblique remark in the complaint suggests, then the pleading was not ample enough, for according to the salutary special principle of Rule 9 (b), 365 Mass. 751 "[i]n all averments of fraud . . . the circumstances . . . shall be stated with particularity."[12]

In considering whether this complaint can survive the motions to dismiss, we are mindful that the new Rules represent a sweeping overturn of attitudes toward pleading. For example, whereas under the previous dispensation in this Commonwealth "[n]o intendment in favor of the pleader . . . [could] be made upon a demurrer," see *Moskow* v. *Boston Redevelopment Authy., supra,* 349 Mass. at 563 (1965), quoting from *Walter* v. *McCarvel,* 309 Mass. 260, 263 (1941), and pleadings were generally to be construed strictly against the pleader, see *Hawes* v. *Ryder,* 100 Mass. 216, 218 (1868), the contrary attitude is to be taken under the new Rules, as the Reporters' Notes under Rule 8 (a) (1) and (b) and elsewhere take pains to say. So also a complaint need not, as under G. L. c. 231, § 7, Second (now repealed by St. 1973, c. 1114, § 157, except as to the District Courts), "state

---

clause in the "cooperation agreement." Here the city of Boston undertook to "take steps" to assure that no city official who "exercises any functions or responsibilities in the review or approval of the Project" shall acquire any "personal interest, direct or indirect, in any property included in the Project Area, or in any contract or proposed contract in connection with the carrying out of the Project."

[12] Chapter 268A, § 23, sets out "standards of conduct" for municipal (and other government) employees including in § 23 (d) a prohibition on their using or attempting to use their official positions to secure ·unwarranted privileges or exemptions for themselves or others "or [to] give the appearance of such action." The complaint refers to § 23 (d). Violation of the standards of § 23, however, calls for such "appropriate administrative action" as is "warranted." It appears, in addition, that the governmental unit or the employee may seek a declaration as to whether a "standard" has been met. See *Selectmen of Avon* v. *Linder,* 352 Mass. 581, 582-583 (1967); *Starr* v. *Board of Health of Clinton,* 356 Mass. 426, 427 (1969).

concisely and with substantial certainty the substantive facts necessary to constitute the cause of action"; it is now enough for the complaint to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief" (Rule 8 [a] [1], 365 Mass. 749). The reasons for the abandonment of the inherited stiff pleading requirements in favor of the simplified style of the new Rules are well known and need not be rehearsed here; they are explained by the Reporters, and have been often repeated in the decisions interpreting the Federal Rules of Civil Procedure upon which our Rules are based. We would be loath to renew the futile paper chase for the supposedly exact pleading, and shall resist any tendency so to interpret the new Rules contrary to their purpose and spirit. Nevertheless the Rules are not designed to encourage a plaintiff to put in a grievously murky complaint, without sufficient attention to its basis in the substantive law, in hopes of somehow finding something helpful to his case in the course of the discovery procedure.

Although we have found much fault with the complaint, we cannot say that when the plaintiffs' counsel reexamine the facts and law they will be unable to state a claim. Cf. *Vogelaar* v. *H. L. Robbins & Co. Inc.* 348 Mass. 787 (1965). We recognize the public importance of the subject matter, cf. *United States* v. *Hayes Intl. Corp.* 456 F. 2d 112, 121 (5th Cir. 1972), and we give weight to the fact that the demurrers, which recited the then conventional battery of grounds, from failure to state a cause of action to multifariousness, were sustained without indication of reasons, see *Griffin* v. *Locke*, 286 F. 2d 514, 515 (9th Cir. 1961).[13] Accord-

---

[13] Our Rule 12 (b), last sentence, provides (although the parallel Federal Rule of Civil Procedure does not) that "[a] motion, answer, or reply presenting the defense numbered (6) shall include a short, concise statement of the grounds on which such defense is based." This should not be allowed to degenerate into a formulary recital but should address itself to the real legal issues.

ingly, we think it best to afford the plaintiffs an oppor-
tunity to reframe their complaint. For this reason, the
decree appealed from will be reversed and the plaintiffs
will have leave to file an amended complaint in the
Superior Court within forty days of the date of the
rescript.[14]   The defendants may then move or answer
according to the Rules.

*So ordered.*

---

[14] As this is the result, it is immaterial as a practical matter
whether we regard the complaint as failing to state a claim or as
being "so vague or ambiguous" as to be vulnerable to a motion to
make more definite and certain under Rule 12 (e).   For the sparing
use and rare success of attacks under Rules 12 (b) and (e) if the
working philosophy of the new Rules is to be carried out, see the
cogent discussions in Wright and Miller, Federal Practice and Pro-
cedure, § 1357 at 598-605, § 1377 (1969); Moore's Federal Practice,
§§ 12.08, 12.21 (2d ed. 1974).