NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

21-P-1151                                          Appeals Court

STEPHEN COMTOIS  vs.  STATE ETHICS COMMISSION.

No. 21-P-1151.

Suffolk.     October 13, 2022. - March 21, 2023.

Present:  Sullivan, Neyman, & Brennan, JJ.

State Ethics Commission.  Conflict of Interest.  Administrative
     Law, Conflict of interest, Substantial evidence, Agency's
     interpretation of statute.  Municipal Corporations,
     Selectmen.

Civil action commenced in the Superior Court Department on
September 16, 2020.

The case was heard by Debra A. Squires-Lee, J., on motions
for judgment on the pleadings.

Meredith G. Fierro for the plaintiff.
T. Michael McDonald (Eve Slattery, Special Assistant
Attorney General, also present) for the defendant.

BRENNAN, J.  After an adjudicatory hearing, the State

Ethics Commission (commission) determined that the plaintiff,

Stephen Comtois, committed two violations of the State conflict

of interest law covering public officials and employees, G. L.

c. 268A, by using his town position to obtain property the town wished to acquire, see G. L. c. 268A, §§ 19, 23 (b) (2) (ii), and assessed civil penalties of $10,000 per violation.[1]  On cross motions for judgment on the pleadings, see G. L. c. 30A, § 14; G. L. c. 268B, § 4 (k), a Superior Court judge upheld the commission's decision.  Comtois filed a timely appeal from that judgment.  We affirm.

1.  Background.  We draw the essential facts from the commission's findings of fact.  See McGovern v. State Ethics Comm'n, 96 Mass. App. Ct. 221, 222 (2019).  At all relevant times, Comtois was chair of the board of selectmen (board) for the town of Brookfield (town).[2]  In 2016, an elderly widow and former resident of the town (owner) sought to donate a parcel of undeveloped land (property) to the town.  The town's board of assessors (assessors) had valued the property at $43,900 despite questions of whether it was a buildable lot.  The assessors had also twice denied the owner's requests to reconsider the assessment and declined to abate her taxes on the property.

---

[1] The commission found no violation on a third, unrelated claim.

[2] Comtois was also a member of the town's zoning board of appeals, a part-time builder, and the owner of a local driving school.

On September 1, 2016, the town's assistant assessor notified board members that the owner wished to donate the property to the town to avoid further taxation. Comtois and other board members informed the assistant assessor that donation of the property required the board "to vote to place the matter before [t]own [m]eeting for acceptance." The assistant assessor researched the property's title, reported his detailed findings to the board, and recommended that the town accept the proposed donation. On December 13, 2016, Comtois voted with all other members of the board to present the proposed donation of the property for consideration at the next town meeting, with the understanding that if the donation was accepted the town would then incur the cost of clearing the title.

When the assistant assessor asked that a member of the board send a letter to the owner detailing the board's decision, Comtois offered to call her. Comtois was given contact information for the owner's real estate broker and called the broker the following day. Comtois knew the broker and had worked with her on several real estate transactions. He told her that (1) a town meeting had not yet been scheduled, (2) the town did not have a warrant article for the proposed donation, and (3) the board would not support the proposed donation. As found by the commission, each of these statements was

"demonstrably untrue." Comtois also stated he would recommend that town meeting not approve the proposed donation, and he failed to convey to the broker that the town would pay to clear the property's title.

In the same conversation with the broker, Comtois offered to purchase the property himself. He and the broker began discussing terms of the sale, including monetary compensation for the property. These negotiations continued throughout January, 2017. Meanwhile, on December 27, 2016, and January 9, 2017, the assistant assessor had asked Comtois for updates of his discussions with the broker on behalf of the town. Comtois's responses were vague, and he did not disclose his intention to purchase the property to the assistant assessor or any of the board members. On February 1, 2017, Comtois acquired the property from the owner for $200 and his agreement to pay "all legal costs necessary to correct any possible defect in the legal description required to convey the land."[3] Approximately eighteen months after the sale, the broker notified the commission that Comtois had purchased the property for himself after the owner had offered to donate it to the town. The commission initiated an investigation and, after an evidentiary

---

[3] The legal costs totaled $602.28.

hearing,[4] unanimously found that Comtois had violated the conflict of interest law.

2. Standard of review. We review a commission decision issued following an adjudicatory proceeding to determine whether it is "supported by substantial evidence, free from error or unlawful procedure, and consistent with its statutory and discretionary authority." McGovern, 96 Mass. App. Ct. at 227. Our analysis is confined to the administrative record. Id. "'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). See Craven v. State Ethics Comm'n, 390 Mass. 191, 201 (1983). "A reviewing court may not make a de novo determination of the facts, make different credibility choices, or draw different inferences from the facts as found by the commission." McGovern, supra. Although we afford "substantial deference" to the commission on issues involving statutory interpretation, "principles of deference . . . are not principles of abdication. In the end, interpretation of a statute is a matter for the courts" (citations omitted). Id.

---

[4] A single commissioner appointed to act as the presiding officer by the full five-member commission conducted the hearing. See 930 Code Mass. Regs. § 1.01(1)(c) (2010). Four witnesses, including Comtois, testified and thirty-two exhibits were submitted by agreement of the parties.

3. <u>Discussion</u>. a. <u>Section 19 violation</u>. G. L. c. 268A, § 19 (<u>a</u>), prohibits a municipal employee from "participat[ing] as [a municipal] employee in a particular matter in which to his knowledge he . . . has a financial interest." Comtois contends that (1) his "participation" was limited to his vote as a board member to submit the proposed donation to town meeting; (2) the "particular matter" was the board's decision on December 13, 2016, whether to submit the donation to town meeting; and (3) a "financial interest" is a "right, claim, title, or legal share" that must exist simultaneously with a municipal employee's "participation." In essence, he argues that the commission erred in its legal interpretation and application of "the interdependent meanings of 'participate,' 'particular matter,' and 'financial interest.'" <u>Graham</u> v. <u>McGrail</u>, 370 Mass. 133, 137 (1976). We disagree.

i. <u>Participate</u>. Under the conflict of interest law, "participate" means involvement "personally and substantially . . . through approval, disapproval, decision, recommendation, the rendering of advice, investigation or otherwise." G. L. c. 268A, § 1 (<u>j</u>). Comtois's assertion that his participation ended with his vote is inconsistent with the broad list of disjunctives in the plain language of the statute. See <u>Worcester</u> v. <u>College Hill Props., LLC</u>, 465 Mass. 134, 138 (2013) ("Where the language of a statute is clear and unambiguous

. . . courts enforce the statute according to its plain wording" [quotations and citation omitted]).  We discern no error in the commission's finding that Comtois's "participation" not only involved discussing the property and voting at the December 13, 2016, board meeting, but also included volunteering to contact the owner, contacting the broker on behalf of the board, and communicating with the assistant assessor concerning the status of his dealings with the broker.  See McGovern, 96 Mass. App. Ct. at 227.

ii.  Particular matter.  In relevant part, G. L. c. 268A, § 1, defines a "[p]articular matter" as "any judicial or other proceeding, application, submission, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, decision, determination, [or] finding." G. L. c. 268A, § 1 (k).  We are not persuaded by Comtois's argument that the commission improperly interpreted the statute by applying it to conduct beyond the board's vote.  Again, the range of "matters" identified by the statute supports the commission's determination that the "particular matter" here was the town's entire process of deciding on and implementing a response to the proposed donation of the property.  See College Hill Props., LLC, 465 Mass. at 138.  It included the assistant assessor's investigation of the property, the board's discussion and vote to submit the proposed donation of the property to town

meeting, communication with the broker (purportedly) on behalf of the town, and communications between Comtois and the assistant assessor regarding the status of Comtois's dealings with the broker.

iii.  Financial interest.  The conflict of interest law does not define the term "financial interest."  See G. L. c. 268A, § 1; Moskow v. Boston Redev. Auth., 349 Mass. 553, 567 (1965), cert. denied, 382 U.S. 983 (1966) ("The statute is deficient in not containing a definition of 'financial interest'").  "A fundamental principle of statutory interpretation 'is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'"  Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006), quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934).

Our analysis of the meaning of "financial interest" under the conflict of interest law starts, as with any undefined statutory term, by looking at the ordinary meaning of the words in the contested phrase.  See Rosenberg v. JP Morgan Chase & Co., 487 Mass. 403, 415 (2021) ("Where . . . a statutory term is

undefined, we look to its ordinary meaning").  In common usage, "financial" is defined as "relating to finance."  Merriam-Webster's Collegiate Dictionary 469 (11th ed. 2020).  As relevant here, "finance" means "money or other liquid resources."  Id.  The definition of "interest" includes "right, title, or legal share in something"; "stake"; and "the state of being concerned or affected [especially] with respect to advantage or well-being."  Webster's Third New International Dictionary 1178 (2002).  Although "right," "title," "legal share," and "stake" without modification are extant nouns, being "concerned" or "affected" in the context of "advantage" or "well-being" are not moored in the present.  Thus, the ordinary meaning of the words "financial interest" contains temporal ambiguity.  Where there is doubt or ambiguity about the precise meaning of a statutory provision, we turn to extrinsic sources to determine legislative purpose and intent.  See College Hill Props., LLC, 465 Mass. at 139.

We begin with the statute's history and context. See Ajemian v. Yahoo!, Inc., 478 Mass. 169, 182 (2017), cert. denied sub nom. Oath Holdings, Inc. v. Ajemian, 138 S. Ct. 1327 (2018) ("To the extent there is any ambiguity in the statutory language, we turn to the legislative history" as guide to legislative intent).  The conflict of interest law was enacted as part of "comprehensive legislation . . . [to] strike at

corruption in public office, inequality of treatment of citizens and the use of public office for private gain." Everett Town Taxi, Inc. v. Aldermen of Everett, 366 Mass. 534, 536 (1974), quoting Report of the Special Commission on Code of Ethics, 1962 House Doc. No. 3650, at 18. It was rooted in the Legislature's concern with the deterioration of the moral fiber of State government following a major scandal involving the Metropolitan District Commission in 1961, and the fear that this moral decay would "permeate all levels of government." Report Submitted by the Legislative Research Council Relative to Conflict of Interest, 1961 Senate Doc. No. 650, at 14. See 1962 House Doc. No. 3650, at 9-10. A paramount concern for the Legislature was the risk inherent in government employment placing an employee in a position where "for some advantage to be gained for himself, he finds it difficult or impossible to devote himself with complete energy and loyalty to the public interest." 1961 Senate Doc. No. 650, at 15. Thus, the statute "seeks to combat secret dealings, influence peddling, inequality of treatment of citizens, and other activities where a public official or employee is confronted with a conflict of interest." McGovern, 96 Mass. App. Ct. at 228.

Against this historical backdrop, we reject Comtois's contention that a government employee's "financial interest" must be construed narrowly to exclude any potential future

financial interest.  Such an interpretation would be contrary to the Legislature's intent, to logic, and to sound public policy. See Spencer v. Civil Serv. Comm'n, 479 Mass 210, 216 (2018) (primary responsibility in interpretation is to "effectuate the intent of the Legislature in enacting [the statute]" [citation omitted]); Harvard Crimson, Inc., 445 Mass. at 749 (statute must be interpreted "so as to render the legislation effective, consonant with sound reason and common sense").  Moreover, a broader interpretation that acknowledges that future advantage was included in the meaning of "financial interest" under G. L. c. 268A, is more consonant with the premise that the "conflict of interest law was enacted as much to prevent giving the appearance of conflict as to suppress all tendency to wrongdoing" (quotation and citation omitted).  Starr v. Board of Health of Clinton, 356 Mass. 426, 429 (1969).

Our conclusion that the definition of "financial interest" under the conflict of interest law is not confined to a right, title, legal share, or stake that is already vested at the time of "participation" in a "particular matter" finds further purchase in the text of the statute and case law interpreting its various provisions.  See Malloy v. Department of Correction, 487 Mass. 482, 496 (2021), quoting Pentucket Manor Chronic Hosp., Inc. v. Rate Setting Comm'n, 394 Mass. 233, 240 (1985) ("we look not only to the specific words at issue but also to

other sections [of the statute], and 'construe them together . . . so as to constitute an harmonious whole consistent with the legislative purpose'").  For example, G. L. c. 268A, §§ 2, 3, which deal with bribery and the offering or acceptance of gifts that are meant to influence an employee, contain terms such as "promises," "solicits," "agrees to receive," "asks," "demands," and "seeks," all of which in context speak to a potential future benefit.  Section 19 (a) refers to "negotiating" and "prospective employment," also indicating that the Legislature contemplated future aspects for the behavior it proscribed.  In addition, the Supreme Judicial Court has held that the conflict of interest law was violated in situations where a public employee participated in a particular matter at a time when the financial interest had not fully ripened.  See Craven v. State Ethics Comm'n, 390 Mass. 191, 201-202 (1983) (organization's intent to pay trust of which members of State employee's immediate family were beneficiaries involved financial interest for purposes of G. L. c. 268A, § 6, State employee equivalent of § 19 municipal employee provision); Sciuto v. Lawrence, 389 Mass. 939, 948-949 (1983) (municipal employee's promotion of brother involved financial interest for § 19 purposes).

    Of course, the definition of "financial interest" pertaining to proscriptions against ethical violations cannot be

without temporal boundary.  See Commonwealth v. Dunn, 43 Mass.
App. Ct. 58, 62 (1997) (statute must be "set forth with
reasonable clarity and provide adequate notice of the conduct
that the Legislature wishes to proscribe").  Here, we need look
no further than, and are guided by, the commission for an
interpretation of the parameters of this phrase.  Indeed, "[t]he
commission, as the State agency charged with administering G.L.
c. 268A, is due 'substantial deference in its reasonable
interpretation of the statute'" (citation omitted).  McGovern,
96 Mass. App. Ct. at 227.  Since 1984, the commission has
interpreted "financial interest" as applying "where it is
obvious or reasonably foreseeable that one's private interests
will be affected by one's official actions."  Conflict of
interest opinion No. EC-COI-84-98 (August 14, 1984), 1984
Massachusetts State Ethics Commission Enforcement Actions &
Advisory Opinions, at 82.  The commission's formulation finds
support in Federal courts' interpretation of 18 U.S.C. § 208,
the Federal counterpart to § 19 of our State conflict of
interest law.[5]  See United States v. Gorman, 807 F.2d 1299, 1303

---

[5] The Federal conflict of interest statute prohibits certain
Federal officers and employees from

    "participat[ing] personally and substantially as a
    Government officer or employee, through decision, approval,
    disapproval, recommendation, the rendering of advice,
    investigation, or otherwise, in a judicial or other
    proceeding, application, request for a ruling or other

(6th Cir. 1986), cert. denied, 484 U.S. 815 (1987) ("[a] financial interest exists . . . where there is a real . . . as opposed to a speculative . . . possibility of benefit or detriment").  See also United States v. Mississippi Valley Generating Co., 364 U.S. 520, 557 (1961) (similarly interpreting predecessor statute to § 208).

Upon consideration of the ordinary usage of the statutory language, the legislative history and purpose of the conflict of interest law, the nature and function of the commission, and the definition of a financial interest under Federal case law, we are satisfied that the commission's interpretation of the phrase "financial interest" is reasonable.  We therefore hold that a financial interest under G. L. c.  268A includes "a financial interest of any size, either positive or negative, as long as it is direct and immediate or reasonably foreseeable" (footnotes omitted).  Conflict of interest opinion No. EC-COI-02-2 (January 31, 2002), 2002 Massachusetts State Ethics Commission Advisory Opinions & Enforcement Actions, at 777.  Under this formulation, we conclude that the administrative record amply supports the

---

determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter in which, to his knowledge, he . . . has a financial interest" (emphasis added).

18 U.S.C. § 208(a).

commission's finding that Comtois violated § 19 (a), and that he "has not met his burden to show that the commission decision was marred by [legal] defect or infirmity."  McGovern, 96 Mass. App. Ct. at 227.

b.  Section 23 violation.  General Laws c. 268A, § 23 (b) (2) (ii), provides that

> "[n]o current officer or employee of a state, county or municipal agency shall knowingly, or with reason to know . . . use or attempt to use such official position to secure for such officer, employee or others unwarranted privileges or exemptions which are of substantial value and which are not properly available to similarly situated individuals."

To conclude that Comtois violated this provision the commission was required to find, by a preponderance of the evidence, that he (1) was a municipal employee; (2) knowingly or with reason to know used or attempted to use his official position; (3) to secure for himself or others an unwarranted privilege or exemption; (4) of substantial value; (5) which was not properly available to similarly situated individuals.  See G. L. c. 268A, § 23 (b) (2) (ii); McGovern, 96 Mass. App. Ct. at 225 n.10.[6] Comtois does not challenge the commission's findings that he was a municipal employee who knowingly used his official position to

---

[6] See also Matter of Edward McGovern, Docket No. 14-0006 (January 5, 2016), 2016-2017 Massachusetts State Ethics Commission Advisory Opinions & Enforcement Actions, at 2592, the commission decision underlying our opinion in McGovern, 96 Mass. App. Ct. at 221.

purchase the property, which was "of substantial value." However, he argues that the commission committed legal error by "conflat[ing]" the elements and dispensing with the requirement that the "privilege" he secured be "unwarranted" and "not properly available to similarly situated individuals." We disagree.

The commission determined that Comtois's purchase of the property was an "unwarranted privilege because, for his own selfish purposes, he used his position as [c]hair of the [b]oard to 'sabotage' [the owner's] decision to donate the [p]roperty to the [t]own and the [t]ownspeople's opportunity to decide whether to accept it." Specifically, the commission found that Comtois used his official position when he (1) voted to present the question whether the town should accept the donation of the property for consideration at the next town meeting; (2) offered to call the broker on behalf of the town and misled her into believing the board would not accept the donation; and (3) provided misleading status reports regarding his discussions with the broker to the assistant assessor. The commission relied on its own previous determination that the "use of one's position for private gain may be an unwarranted privilege." Thus, it concluded that Comtois's private purchase of the property was an unwarranted privilege because it was "lacking in adequate or official support . . . having no justification;

[and] groundless." Separately, the commission also found that the "privilege" was not available to similarly situated individuals. Although it was "public knowledge" that the owner wanted to donate the property to the town, no one else had the authority or was "in a position" to mislead the broker that the donation was unlikely to be accepted by the town. In essence, the commission found that Comtois was in the unique position to undermine the process and secure the purchase of the property before town meeting voted on whether to accept it as a donation. Therefore, the opportunity was not available to others who might have a "similarly situated" interest in purchasing the property. Contrary to Comtois's assertion that the commission impermissibly combined the elements of G. L. c. 268A, § 23 (b) (2) (ii), to prove a violation, we find no error of law in the commission's decision because substantial evidence supported each required prong.

4. Conclusion. For the reasons stated, we agree with the Superior Court judge that the commission's decision concluding that Comtois violated G. L. c. 268A, §§ 19, 23 (b) (2) (ii), was supported by substantial evidence, not arbitrary or capricious, or based on error of law. Accordingly, we affirm the judgment entered in the Superior Court upholding the decision and order of the commission.

So ordered.