Merrick, J.
This is an action to recover for goods sold and delivered by plaintiff T&S Wholesale, Inc. (“T&S”) to Goldstein’s Market in Chelsea, Massachusetts. The trial court allowed the defendant’s Mass. R. Civ. R, Rule 56 motion for summary judgment, and T&S appealed pursuant to Dist./Mun. Cts. R. A. D. A, Rule 8C.
Defendant Hermine Kavlakian’s (“Hermine”) affidavit in support of her summary judgment motion stated that she was seventy three years old and unable to read or speak English,[1] that she had never done any business with T&S, and that her late husband had a business in Chelsea and may have done so.
T&S filed a counter-affidavit by its vice president indicating that T&S had sold and delivered tobacco products to Goldstein’s Market from January 8 to March 16, 1993, and that the store had been owned by Hermine’s late husband, Sahag Kav-lakian (“Sahag”), who had died intestate on February 5, 1993.[2] The affidavit further recited that Hermine had inherited fifty (50%) percent of Goldstein’s Market from her husband, and that her son, Sarkis Kavlakian (“Sarkis”), had stated that the “new owners” would be responsible for deliveries made prior to his father’s death.
Hermine moved to strike portions of T&S’ counter-affidavit. The trial court did not act upon that motion, but allowed Hermine’s motion for summary judgment.
1. Hermine’s motion to dismiss this appeal as untimely is denied. Judgment was entered on July 21,1997. T&S filed a timely Mass. R. Civ. R, Rule 52(b) motion to *100 amend the court’s “findings of fact and/or law” on July 30,1997, within ten days of judgment entry.[3] Pursuant to Dist./Mun. Cts. R. A D. A, Rule 4(a), the plaintiff’s postjudgment motion effectively suspended the time for filing a notice of appeal to this Division.[4] Barrett v. Pereira, 1997 Mass. App. Div. 45, 45-46. See generally, Okongwu v. Stephens, 396 Mass. 724, 727 (1986); Zatsky v. Zatsky, 36 Mass. App. Ct. 7, 8 (1994). T&S thereafter filed a timely notice of appeal within ten days of the court’s denial of its postjudgment motion.
2. In alleging error in the court’s summary judgment order, T&S relies on its vice-president’s counter-affidavit and the exhibits attached to its written opposition. A review of these materials indicates, as a preliminary matter, that Hermine properly moved to strike portions of the counter-affidavit.[5]
The counter-affidavit of T&S asserts that it was made upon its vice-president’s "personal knowledge." Hermine moved to strike (1) a portion of paragraph 2, which stated that “prior to February 5,1993, one Sahag Kavlakian, the defendant’s husband, was the owner of Goldstein’s Market,” and (2) paragraph 5, which stated: “According to my counsel, the defendant inherited one half (50%) of Goldstein’s Supermarket on February 5,1993 ...”
Rule 56(e) requires that summary judgment affidavits
shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein [emphasis supplied].
Where an affiant’s competence to testify at trial as to critical portions of the affidavit is neither apparent from the circumstances, nor affirmatively represented on the face of the affidavit, a judge should disregard the affidavit in passing on a motion for summary judgment. Stanton Indus., Inc. v. Columbus Mills, Inc., 4 Mass. App. Ct. 793, 794 (1976). The operative standard is a practical one.
A useful rough test for evaluating the evidentiary sufficiency of any affidavit is simply: if the affiant were in court, testifying word-for-word in accordance with the contents of the affidavit, would the judge sustain an objection on any ground whatsoever? If the answer is “Yes’ or even ‘Probably,’ the affidavit is vulnerable.
*101 J.W. SMITH & H.B. ZOBEL, RULES PRACTICE, §56.6 (1977). The necessity for this rule is at the very heart of the purpose of summary judgment.
The rationale for requiring admissible evidence in affidavits is to ensure that ‘trial would not be futile on account of lack of competent evidence’ .... ‘Conclusory statements, general denials and factual allegations not based on personal knowledge are insufficient to avoid summary judgment.’
Madsen v. Erwin, 395 Mass. 715, 721 (1985). See also Orix Credit Alliance, Inc. v. LeGallo, 1994 Mass. App. Div. 131, 133.
While a trial judge may consider an improper affidavit, in the absence of a motion by the opponent to strike it, Jackson v. Action for Boston Community Develop., Inc., 403 Mass. 8, 12 n. 2 (1988); Madsen v. Erwin, supra at 721; Fowles v. Lingos, 30 Mass. App. Ct. 435, 439-440 (1991); Orix Credit Alliance, Inc. v. LeGallo, supra at 133, the defendant in this case did in fact file such a motion.
The counter-affidavit in question demonstrates no basis for the “personal knowledge” of the T&S vice president for his averment in paragraph 2 as to Sahag’s ownership of Goldstein’s Supermarket. The affidavit does establish, by means of attached copies of records from the Secretary of State of the Commonwealth, that a corporation called “Goldstein’s Supermarket, Inc.” did business at the location of Goldstein’s Supermarket and was dissolved in 1990. Sahag was not an officer or director of that corporation. On somewhat shakier ground, the affidavit states that there has been no “doing business” or “d/b/a” certificate filed in Chelsea for the market. Also attached to the affidavit is a death certificate which lists Sahag’s occupation as “Owner/Manager” of “Retail Grocery Stores” at unnamed locations. A third attachment to the affidavit is a copy of an application filed by Hermine in the Probate Court to administer Sahag’s estate. It should be noted that the assets listed on the application do not include a market or the contents thereof. Finally, the affidavit sets forth that, after Sahag’s death, Hermine’s son Sarkis[6] told T&S, impliedly in consideration of continued deliveries, that the “new owners” would be responsible for past charges. None of this is sufficient to permit an inference that Sahag owned Goldstein’s Supermarket at the time of his death. No other basis is advanced to “show affirmatively” that the T&S vice president was competent to make any statement or averment as to Sahag’s ownership.
The statement in paragraph number 7, quoting counsel as to Hermine’s inheritance, is inadmissible hearsay. Moreover, even if such statement had been made in an affidavit by counsel, it would have constituted a legal conclusion that, as we discuss below, is demonstrably incorrect.
In short, Hermine’s motion to strike the offending portions of the counter-affidavit should have been allowed. Hermine was not, however, prejudiced by the trial court’s inaction on her motion to strike, as the court correctly ruled on Hermine’s summary judgment motion that, even assuming Sahag owned the market at the time of his death, T&S had not established any legal obligation on the part of Her-mine, personally.
3. The essence of T&S’ argument on this appeal is that Sahag owned the market, that when he died intestate, the market passed immediately to Hermine and her sons who then became partners in the venture, and that Hermine was thus bound by any statements made to T&S by her partner-son. T&S failed to demonstrate, however, that Sahag’s estate was ever settled; indeed, it appeared at oral *102 argument that the estate was still open. Title to personalty does not pass to heirs at law until the estate is settled. Stuck v. Schumm, 290 Mass. 159, 163 (1935); Lowell v. Hudson, 268 Mass. 574, 577 (1929); Rolfe v. Atkinson, 259 Mass. 76, 78 (1927).
Beyond its erroneous legal assertion as to inheritance of personal property, T&S concedes that it can advance no argument that Hermine had any actual involvement in the market. It should be noted that T&S, for whatever reason, has not sued Hermine in her capacity as administrator of Sahag’s estate. See Kobrosky v. Crystal, 332 Mass. 452, 461 (1955); Reardon v. Whalen, 306 Mass. 579, 581 (1940). The trial judge’s allowance of Hermine’s motion for summary judgment was correct.
There being no error, summary judgment for defendant Hermine Kavlakian is affirmed. The plaintiff’s appeal is dismissed.
So ordered.

 The affidavit recites that it was translated and read by Hermine’s son, Alex Kavlakian.

 Because of the grounds upon which we decide the plaintiff’s appeal, it is unnecessary to distinguish between the goods sold before Sahag’s death and those sold after it.

 The trial court did not make “findings of fact” per se, which would be antithetical to summary judgment procedures, but issued a written order setting forth the reasons and conclusions of law underlying its summary judgment decision. A though captioned as a Rule 52(b) motion to amend or make additional “findings,” the plaintiff’s motion was in substance a Rule 59 (e) motion to alter or amend judgment.

 While Rule 4(a) lists a Rule 52(b) motion to alter or amend as one of the post-judgment motions which toll the time for commencing an appeal, the 1996 merger of the District & Municipal Court Rules into the Massachusetts Rules of Civil Procedure has resulted in a designation of a motion to alter or amend in the District Court as one pursuant to Rule 52(d).

 The fact that Hermine did not file a cross-appeal did not preclude her right to argue that the counter-affidavit should have been stricken by the trial court. Athough failure to take a cross-appeal precludes a party from obtaining a judgment on appeal more favorable than the judgment entered by the trial court, Chelsea Indus., Inc. v. Gaffney, 389 Mass. 1, 19 n. 24 (1983), a party may defend a judgment on any ground asserted or argued in the trial court. Boston Edison Co. v. Boston Redevelop. Auth., 374 Mass. 37, 43 (1977).

 The bare assertion that Sarkis is at least Sahag’s son is substantiated by the inclusion of his name in the listing of Sahag’s heirs in the filing for the administration of Sahag’s estate.