Swan, J.
Advanced Spine Centers, Inc., doing business as First Spine & Rehab (“Advanced Spine”), commenced this action against Arnica Insurance Company (“Arnica”) to recover personal injury protection (“PIP”) payments under G.L.c. 90, §34M and damages under G.L.C. 93A for chiropractic services rendered by Advanced Spine to Ayra Ventura (“Ventura”), Arnica’s insured. The trial court allowed Arnica’s motion for summary judgment on the ground of Ventura’s noncooperation, and Advanced Spine filed this appeal.
We view the evidence in the light most favorable to Advanced Spine, Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991); Mass. R. Civ. P. Rule 56(c), and accept the following facts. Ventura was injured in Fitchburg, Massachusetts on May 22, 2004 while driving a motor vehicle insured by Arnica. She hit her head against the driver’s side window, but felt no pain and went home. Pain occurred thereafter, and the next day Ventura sought treatment at Leominster Hospital, where she was examined, given medications, and released. Experiencing further head, neck, and back pain, she was treated by Advanced Spine through the end of June, 2004. Ventura executed a written assignment of her PIP benefits to Advanced Spine on June 1, 2004 before beginning her eight chiropractic treatments.
On July 20, 2004, Arnica received from Jacob P. Morris (“Morris”), an attorney representing Ventura and three other persons injured in the accident, a letter requesting PIP applications. On July 28, 2004, Christine M. Roy (“Roy”), an Arnica claims adjuster, sent to Morris a PIP application for Ventura, and asked him for “any additional information you may obtain” as Arnica had “very limited information on this loss.” On October 20,2004, Arnica received from Morris completed PIP applications, health affidavits, and medical authorizations for two of his clients, but not for Ventura. Morris followed up by sending medical bills for those two clients to Arnica over the next few months, and their PIP claims were processed in the ordinary course. But Morris never sent a PIP application or any additional information for Ventura.
*46 On February 24, 2006, Roy received medical records and bills from Advanced Spine relating to the 2004 treatment rendered to Ventura. On March 17, 2006, Roy replied that Ventura had never responded to Arnica’s request for a completed PIP application, that there was no PIP application on file, and that the claim had thus been closed. When a collection agency wrote to Arnica on September 18, 2007, demanding payment of $945.00 on behalf of Advanced Spine, Roy responded that there was no PIP application.
Roy averred in an affidavit submitted in support of Arnica’s summary judgment motion that because of Ventura’s failure to file a timely PIP application, Arnica was “prevented from investigating the claimanf s PIP claim, from sending the claimant’s medical records for review, from determining whether the medical bills submitted were ‘reasonable and necessary and from investigating into whether the claimed injuries were caused by the subject accident” Roy further averred that “the PIP forms require a disclosure of health insurance which would have enabled Arnica ... to determine the amount of coverage available in this claim. No such information was received, however.” On January 22, 2010, five and one-half years after Ventura’s accident, almost four years after Arnica informed Advanced Spine that the claim had been closed due to the nonfiling of a PIP application, and two years after Arnica informed Advanced Spine’s collection agency of that nonfiling, Advanced Spine brought this suit.
Arnica’s defense of noncooperation, which was the basis for summary judgment, is found in G.L.c. 90, §34M, which provides in part:
Claim for benefits due under the provisions of personal injury protection or from the insurer assigned shall be presented to the company providing such benefits as soon as practicable after the accident occurs from which such claim arises, and in every case, within at least two years from the date of accident, and shall include a written description of the nature and extent of injuries sustained, treatment received and contemplated and such other information as may assist in determining the amount due and payable (emphasis added).
In Boffoli v. Premier Ins. Co., 71 Mass. App. Ct. 212 (2008), further app. rev. denied, 451 Mass. 1103 (2008), the Appeals Court held that while the claimant in that case conceded that the filing of an incomplete PIP application four months after the accident was not “as soon as practicable,” it did not amount to noncooperation because “an insurer must demonstrate prejudice when denying PIP benefits because of the late filing of the application for such benefits, provided that the application is filed within two years after the accident.” Id. at 216.[2]
In this case, no PIP claim was filed at all, even though an application form was promptly sent to Ventura’s counsel at his request. And while the attorney filed claims for other persons injured in the same accident, nothing was ever submitted by Ventura or her attorney on her behalf. What was finally received came not from *47 Ventura, but from the assignee other claim, Advanced Spine. These materials were medical reports and bills, but no formal PIP application. We have previously ruled that a PIP insurer should not deny coverage simply because the injured party did not complete the insurer’s own prescribed forms contained in a “PIP package” as long as the insurer otherwise receives everything needed to evaluate and process the claim. Advanced Spine Ctrs., Inc. v. Pilgrim Ins. Co., 2010 Mass. App. Div. 120, 121-122. Notwithstanding the bills and records, Arnica still did not, according to Roy’s affidavit, get any information on other health insurance available to Ventura, which was needed to coordinate benefits under G.L.c. 90, §34A Thus, the PIP “application,” such as it was, was incomplete.
But what is dispositive is the time delay. Not until twenty-one months after the accident, and twenty months after the eight sessions of treatment did Arnica receive Advanced Spine’s bills and records. Section 34M of G.L.c. 90 requires that the claim be filed “as soon as practicable after the accident occurs.” In Boffoli, supra, the Appeals Court noted that “[w]hat time period constitutes ‘as soon as practicable’ may vary according to the facts of the case.” Id. at 217 n.3. The “facts of the case” are dictated by giving to the word “practicable” its “plain meaning,” see Michael Anthony Assocs., Inc. v. Next Jump, Inc., 2012 Mass. App. Div. 38 (No. 11-ADMS-10052, issued February 23, 2012), to wit, “capable of being put into practice or of being done or accomplished.” Merriam-Webster’s Collegiate Dictionary 912 (2001). Surely, once Advanced Spine’s treatment of Ventura was completed by the end of June, 2004, the filing of a PIP claim was at that moment “capable of being done.” In Advanced Spine Ctrs., Inc. v. Pilgrim Ins. Co., supra, the PIP application, or at least documents to evaluate the claim, were filed six days after the accident, unquestionably within the realm of practicability. Id. at 120. By contrast, in Boffoli, supra, the plaintiff conceded that four months was not as soon as practicable. Id. at 217 n.3. And upon any view of the facts of this case, a period of twenty-one months cannot be considered “as soon as practicable.” Advanced Spine’s PIP application was untimely.
Our inquiry does not end here, however. Since the PIP application, though incomplete and untimely, arrived at Arnica’s offices within two years after the accident, Arnica had the additional burden to “demonstrate prejudice when denying PIP benefits because of the late filing.” Id. at 216. Roy’s affidavit so demonstrates. The late filing prevented Arnica from investigating the claim, submitting the medical records for review, making a determination that the claim was for “reasonable expenses” incurred for “necessary medical” services, G.L.c. 90, § 34A and investigating the causal relationship between the accident and the treated injuries. Notably, Arnica had requested, in its very first letter to Morris, that he provide Arnica with “any additional information” he may obtain as Arnica had “very limited information on this loss.” Arnica heard nothing in reply, rendering impossible its ability to review the claim, a problem then exacerbated by the passage of a year and one-half before Advanced Spine forwarded its bills and records.[3] And without ever receiving a dis *48 closure of health insurance, Arnica could never “determine the amount of coverage available in this claim.” Prejudice to Arnica arising from the late PIP filing was established beyond peradventure.
Summary judgment is appropriate where the moving party demonstrates “that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Flesner v. Technical Communications Corp., 410 Mass. 805, 808-809 (1991), quoting Madsen v. Erwin, 395 Mass. 715, 719 (1985). As Arnica established that Ventura and her assignee, Advanced Spine, failed to cooperate with Arnica by failing to file a PIP application as soon as practicable after the accident, with prejudice to Arnica, the burden shifted to Advanced Spine, “by affidavits or as otherwise provided in this rule, [to] set forth specific facts showing that there is a genuine issue for trial.” Mass. R. Civ. R, Rule 56(e). Advanced Spine filed no such response. Summary judgment for Arnica was properly entered.
Judgment affirmed.

 While not relevant to the facts of this case, it is worthwhile noting that the Appeals Court added: “The insurer, however, need not show prejudice if the application is received after two years from the date of the accident.” Id. at 216. See Northshore Chiropractic v. Commerce Ins. Co., 2010 Mass. App. Div. 168, 169.

 Nowhere do the parties suggest, nor do we, any lack of diligence on the attorney’s part, especially in light of his prompt filing of PIP claims for his other clients. The fact that he provided no further information on Ventura’s behalf may well be attributed to the fact that she had assigned her claim to Advanced Spine and had no further interest in pursuing it. If anything, the perpetrator of the delay was Advanced Spine itself.