Fahey, J.
This action arises from plaintiffs employment as an Interim Pastor with the First Congregational Church of Haverhill, Massachusetts (FCCH). This matter is before the Court on Defendants’ Motion to Dismiss the Plaintiffs Complaint. The Complaint sets forth six counts: Breach of Contract; Defamation; Violations of M.G.L.c. 15 IB; Tortious Interference with Prospective Advantageous Relationships; Violation and Inducing a Violation of Right to Privacy; and Intentional Infliction of Emotional Distress. Defendants urge this Court to dismiss Plaintiffs Complaint for ten reasons. The bases of the defendants’ motion are as follows: .that this Court lacks subject matter jurisdiction[2] over the claims stated in the Complaint because they arise from ecclesiastical proceedings; that plaintiff failed to file a timely complaint with the Massachusetts Commission Against Discrimination for the M.G.L.c. 151B claims; that the basis of the M.G.L.c. 151B claims does not arise out of any employment relationship; that the documents plaintiff cites as establishing a contract between the Massachusetts Conference of the United Church of Christ and plaintiff do not constitute a contract; that plaintiff failed to plead the alleged defamatory statements with enough specificity; that plaintiff failed to establish which specific defendant allegedly made the defamatory statement; that the defendants acted with lawful cause in interfering with plaintiff s advantageous business relationships; that plaintiff failed to allege that defendants violated his right to privacy; that there is no cause of action for inducing a person to violate his own right to privacy; and that plaintiff failed to allege facts sufficient to show that defendants’ conduct was extreme and outrageous and beyond all bounds of decency for the alleged intentional infliction of emotional distress. For the reasons set forth below, the defendants’ motion is DENIED.
Background
The plaintiff entered into an Interim Senior Pastor Covenant Contract with FCCH on January 19, 1997. That contract provided that plaintiff would serve the' FCCH congregation as an interim pastor until a permanent pastor was retained. Plaintiff submitted his resignation on April 26, 1998, to be effective June 30, 1998. Plaintiff claims that, as a result of this employment, his right to practice as a minister of the United Church of Christ (UCC) faith was suspended by the Massachusetts Conference of the United Church of Christ (MAUCC). Plaintiff alleges that since August 31, 1998, he has been required to inform prospective church employers that a complaint was proceeding against him with the MAUCC. On April 29, 1999 a Hearing Committee convened by the MAUCC began disciplinary hearings. On May 18, 1999, the MAUCC issued a decision indefinitely suspending the plaintiffs authority to practice ministry. After plaintiff appealed, the Review Panel of the MAUCC affirmed the decision on September 17, 1999. Plaintiff filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) on November 15, 1999 alleging that defendants violated M.G.L.c. 151B, 4, 1, 4A, and 16A. Plaintiff amended his complaint with MCAD on May 10, 2000 to allege that defendants violated M.G.L.c. 151B, 4, 1,4, 4A, and 16. On July 31, 2000, *434 MCAD decided that it lacked jurisdiction over the plaintiffs complaint pursuant to M.G.L.c. 15IB, IB. After the plaintiff appealed that decision, a hearing was held, and additional documents were supplied. The July 31, 2000 MCAD decision was affirmed on May 2, 2001, with the MCAD determining that it lacked subject matter jurisdiction over the plaintiffs complaint. Plaintiff filed the present action on June 29, 2001.
Discussion
Standard of Review
A motion to dismiss requires the Court to “accept the factual allegations in the plaintiffs’ complaint, as well as any favorable inferences reasonably drawn from them, as true.” Ginther v. Commissioner of Insurance, 427 Mass. 319, 322 (1998). See also Nader v. Citron, 372 Mass. 96, 98 (1977). In evaluating the facts under Rule 12(b)( 1), “the judge may consider affidavits and other matters outside the face of the complaint that are used to support the movant’s claim that the court lacks subject matter jurisdiction.” Ginther at 322. The complaint must be deemed sufficient unless defendant shows beyond doubt that no provable set of facts would entitle the plaintiffs to relief. Harvard Law School Coalition for Civil Rights v. President & Fellows of Harvard College. 413 Mass. 66, 68 (1992). This is a “relatively light burden.” Warner-Lambert Co. v. ExecuquestCorp., 427 Mass. 46, 47 (1998). Plaintiff must be given the benefit of any doubt. Kipp v. Keuker, 7 Mass.App.Ct. 206, 210 (1979).
Subject Matter Jurisdiction and Civil Litigation Involving Religious Organizations
The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, “prohibits civil courts from intervening in disputes concerning religious doctrine, discipline, faith, or internal organization.” Alberts v. Devine, 395 Mass. 59, 72 (1985). The “assessment of an individual’s qualifications to be a minister, and the appointment and retirement of ministers, are ecclesiastical matters entitled to constitutional protection against judicial or other State interference.” Id. at 72-73. Counts I, III and V involve a dispute over the discipline and governance of a minister by his superiors in a religious organization. While the First Amendment prohibits civil courts from “intervening” in such disputes, the Alberts Court held that “the First Amendment does not preclude civil courts from examining the proceedings that resulted in [a minister’s] failure to gain reappointment as minister of the Old West Church in order to determine whether that event resulted from wrongful conduct of [his superiors].” (Alterations and emphasis added.) Id. at 75. Counts II, IV and VI involve torts by secular as well as churchaffilitated defendants. Alberts further concluded that “the religion clauses of the First Amendment do not preclude the imposition of liability on [church superiors] nor bar the courts of this Commonwealth from inquiring into the church’s proceedings that resulted in [the minister’s] failure to gain reappointment as minister of Boston’s Old West Church.” Id. at 75.
In Hiles v. Episcopal Diocese of Massachusetts, 51 Mass.App.Ct. 220 (2001), the Appeals Court partially reversed and partially affirmed the rulings of the Superior Court in a dispute that arose over monies bequeathed to the Church by a parishioner. Hiles, the Pastor of the Church, felt that the Church should retain the money. Reverend Shaw, the Bishop of the Episcopal Diocese of Massachusetts, felt that the money should be conveyed to the Diocese. As a result of the tactics employed to coerce Hiles into handing the money over, Hiles filed a suit alleging multiple torts, including violations of his Federal and State civil rights. The defendants defended principally on the ground that the action was barred by the First Amendment which precludes the jurisdiction of civil courts in ecclesiastical matters. Id. at 224-25. In its analysis of the ecclesiastical preclusion against subject matter jurisdiction in civil courts, Hiles cited several Federal and Massachusetts cases, including: Watson v. Jones, 80 U.S. (13 Wall.) 679, 733 (187l);[3] Serbian E. Orthodox Diocese for the U.S. & Can. v. Milivojevich, 426 U.S. 695, 724-25 (1976);[4] Advent v. Protestant Episcopal Diocese of Mass., 426 Mass. 268, 280 (1997);[5] Fortin v. Roman Catholic Bishop of Worcester, 416 Mass. 781, 785 (1994);[6] and Antioch Temple, Inc. v. Parekh, 383 Mass. 854, 861 (1981). Hiles determined that “tortious conduct is not necessarily beyond the reach of civil courts merely because such conduct occurs in a religious context." Hiles at 227. Hiles quotes dictum from Madsen v. Erwin, 395 Mass. 715 (1985), a case dealing with the discharge of a lesbian employee of the Christian Science Church: “Under the banner of the First Amendment provisions on religion, a clergyman may not with impunity defame a person, intentionally inflict serious emotional harm on a parishioner, or commit other torts.” Hiles at 227. The Court then proceeded to analyze each count according to whether it should be included in the penumbra of First Amendment protection.
Of particular interest is the Court’s analysis of the law concerning libel and slander as well as the alleged violations of the Massachusetts Civil Rights Act. The Court held that the libel and slander count should not have been dismissed for lack of subject matter jurisdiction because: (1) the sexual affair allegations giving rise to the libel and slander count had nothing to do with religious doctrine, church discipline, faith, or internal organization, Hiles at 228; (2) examining the allegations would not challenge any binding decision of a church tribunal; id.; (3) analyzing of the behavior would focus on Defendant Hastie, a secular person, not on Hiles, a pastor; id. at 229; and (4) Hastie’s actions, although occurring in a religious setting, were for the secular purpose of injuring Hiles’ reputation; id. Since all of these factors taken together demonstrate that the libel and slander charges are not *435 “essentially ... a religious dispute,”[7] the “right[s] of the Episcopal defendants to the free exercise of their religion, including the disciplinary and governance functions involved in the ecclesiastical proceedings, will not be impeded by the prosecution or outcome of these civil proceedings.” Id.
Although the civil rights violation counts in Hiles involved evaluation of a summary judgment decision, not a motion to dismiss for lack of subject matter jurisdiction, the Court’s discussion of the religious implications is informative nonetheless. Hiles affirmed the entry of summary judgment on the civil rights counts because the Temporary Inhibition had been issued in accordance with the applicable Canon Law of the Episcopal Church and therefore the Court found “nothing that would justify the intrusion of the civil courts into the course of events which are the subject of the Temporary Inhibition.” Id. at 231. Thus, if a court examines an ecclesiastical church’s written procedures and finds that the organization has complied with its own regulations, the court has no further jurisdiction. As Hiles stated, “[t]hose are proceedings entirely within the rules and doctrines of the Episcopal Church, and any protest by Hiles with respect to them must be lodged with the ecclesiastical courts, not the civil courts.” Id.
In this case, the defendants agree that the local church, FCCH, is a congregational church, but claim that the MAUCC is an ecclesiastical, and therefore hierarchical, church. The plaintiff claims that both entities are congregational. The determination of a church’s structure is a question of fact. Antioch, supra at 862, citing Wheeler v. Roman Catholic Arch Diocese of Boston, 378 Mass. 58 (1979). “To make this determination and to identify the governing church body, recourse must be had to ecclesiastical documents of the individual church and of any larger church organizations with which it is associated.” Antioch at 862. While civil courts must tread more cautiously in disciplinary matters concerning hierarchical churches, the same deference is not accorded to congregational churches. Parish of the Advent v. Protestant Episcopal Diocese of Massachusetts, 426 Mass. 268, 281 (1991); Antioch at 865. Since defendants concede the FCCH is a congregational church, the only issue of fact is as to whether MAUCC is congregational or hierarchical.
In order to decide whether the MAUCC is a hierarchical or congregational organization, this Court would have to examine any documents relevant to the establishment of the FCCH, any documents relevant to the relationship between the FCCH and the MAUCC, as well as all of the documents referenced by both plaintiff and defendants pertaining to the procedure used by MAUCC to decide that plaintiff was to be suspended from his ministerial duties. These documents are not before the Court.
However, for the reasons stated below, regardless of whether the MAUCC is ultimately determined to be hierarchical or congregational, I determine that, at this preliminary stage, this Court has subject matter jurisdiction over all six counts of the Complaint.
Count I, Breach of Contract
Plaintiff alleges that the documents relied upon by the MAUCC to formulate their proceedings against Callahan constitute an employment contract under which Callahan was denied rights set forth therein. Defendants assert that these documents are merely guidelines followed by the MAUCC in carrying out the disciplinary hearings against plaintiff and do not constitute a contract. Those documents are not before the Court. The allegedly violated contractual rights stated in the Complaint concern a failure to conform to the procedure set forth collectively in the “contract documents.” For the purposes of evaluating this motion to dismiss, I accept as true plaintiffs assertions that the disciplinary procedures were “ad hoc” and that the “contract documents” do form a contract between plaintiff and the MAUCC. This Court clearly has authority to evaluate whether the procedure, if any, established within these documents was adhered to without delving into the area of analyzing religious doctrine. Such objective analysis is allowed by Alberts, 395 Mass. 59, 75 (1985). Objective document examination is also authorized by Antioch, 383 Mass. 854, 862 (1981), and Jones, 443 U.S. 595, 604 (1979). Accordingly, Defendants’ Motion to Dismiss Count I is denied.
Count II, Defamation
The defendants allege that this Court lacks subject matter jurisdiction over Count II, Defamation, and further allege that plaintiff failed to plead the alleged defamatory statements with specificity and plaintiff failed to allege who specifically made the statements outlined in the Complaint. This count seems to parallel the libel and slander count stated in Hiles. However, this case differs from the Hiles analysis in that one of the alleged defamers is an ordained individual. However, Hiles, relying on Madsen, determined that a clergyman may not defame someone, intentionally inflict serious emotional harm on a parishioner, or commit other torts. Hiles at 227. As evaluating whether a statement is defamatory is not an essentially religious dispute, this Court has subject matter jurisdiction over this count.
Although the defendants also claim that allegedly defamatory statements must be pleaded verbatim, I am satisfied that that is not the standard to which plaintiff is required to adhere. See Draghetti v. Chmielewski, 416 Mass. 808, 812 (1994), and Hiles.
The defendants are on sufficient notice of the alleged facts supporting the defamation count:
The statements attributed to the defendants in the complaintthat Callahan was suffering from a neurological illness, including Alzheimer’s disease, that he tampered with a bicycle, that he tampered with *436 pledge cards, that he breached confidences, that he called the congregation evil, that he mailed a fake stuffed rat to the former treasurer /seminarian of the church, that he had a suspicious relationship with a seminariandiscredit Callahan, under the circumstances, in the minds of the community in which he practiced as a minister and sought future employment. As such, these allegations sufficiently state a claim of defamation.
Plaintiffs Opposition to Defendants’ Motion to Dismiss at 14. Accepting all the facts pled by plaintiff and all the reasonable inferences flowing from them, plaintiff has pled the defamation count sufficiently to put the defendants on notice. Draghetti v. Chmielewski, 416 Mass. 808 (1994), and Hiles. Any failure in this regard may be remedied by the filing of a motion for a more definite statement. Accordingly, the Defendants’ Motion is denied with regard to Count II.
Count III, Violations of M.G.L.c. 15 IB
Defendants allege three grounds for dismissal of Count III: lack of subject matter jurisdiction under M.G.L.c. 151B, 1(5), lack of an employment relationship with MAUCC (and therefore Rev. Harper), and failure to file a timely complaint with the MCAD. First, defendants allege that this Court lacks subject matter jurisdiction due to M.G.L.c. 151B, 1(5) which shields religious institutions that act “with respect to matters of employment, discipline which are calculated by such organization to promote the religious principles for which it is established or maintained.” M.G.L.c. 151B, 1(5). However, as plaintiff points out, the M.G.L.c. 15IB claims at issue in this action deal not with the discipline, but with defendants’ alleged retaliation for “(i) raising his concerns about discrimination by the FCCH’s search committee against gay and lesbian candidates for the ministry and against a candidate in a mixed race marriage, (ii) making statements against homophobia, and (iii) perceptions by the defendants as to his sexual orientation and mental health. Complaint, 12, 14, 22, 23, 25, and 35.” Id. Defendants fail to allege some aspect of religious doctrine espoused by the United Church of Christ that would preclude Callahan’s continuing employment as a Pastor of their church in order to fall within the M.G.L. 151B 1(5) exception. See Madsen v. Erwin, 395 Mass. 715, 725 (1985). Accordingly, under Hiles, the defendants have failed to establish that this is essentially a religious dispute and it follows that this Court has subject matter jurisdiction over it.
As to defendants’ second basis for dismissal of this claim, M.G.L.c. 151B, 4 and 4A prohibit any “person” from violating another’s rights under these sections. M.G.L.c. 151B, 1 defines the term “person” to include “one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and the commonwealth and all political subdivisions, boards, and commissions thereof.” 4 of c. 15 IB specifically makes it unlawful “for any person, employer ... to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint ...” Although in both Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521 (2001), and Beaupre v. Cliff Smith & Associates, 50 Mass.App.Ct. 480 (2000), the harassers were employers of the plaintiff, the strict wording of M.G.L.c. 151B, 4 and 4A is to deter unlawful discrimination and the “any person” language within the context of the statute does not require an employment context. See Erewa v. Reis, 20 MDLR 36, 38 (1998).
As to defendants’ third basis for dismissal of this count, there does not appear to be any dispute but that the MAUCC investigation arose out of plaintiffs employment with FCCH. As to timeliness and the continuing violation theory, plaintiff asserts that the initial filing of a formal complaint in August of 1998 was the first of many actions by the defendants in a scheme of harassment and discrimination. After the MAUCC board found against him, plaintiff fully utilized the appellate process available to him internally through MAUCC. I find that, for the purposes of this motion, plaintiff could have reasonably expected the situation to improve through this internal procedure. See Cuddyer, supra at 539. After the MAUCC appellate board confirmed the lower board’s finding, plaintiff had exhausted all of his internal remedies and found no relief. Plaintiff then timely filed with the MCAD and getting no recourse there, then filed this civil action. Taking plaintiffs assertions to be true, plaintiff has pled sufficient facts to survive the Motion to Dismiss.
Count IV, Tortious Interference with Prospective Advantageous Relationships
This court has subject matter jurisdiction over this count because this is not essentially a religious dispute because the named FCCH defendants and Rev. Harper have no religious interest in keeping plaintiff from seeking employment elsewhere. In addition to the subject matter jurisdiction issue, the defendants argue that plaintiff cannot meet the required element of a “business relationship” or contemplated contract of economic benefit because, while Callahan does get paid as an Interim Pastor, the. overriding character of the relationship is a religious one. However, plaintiff argues against the essentially religious relationship argument by pointing out that this count is asserted only against the FCCH Defendants and Rev. Harper not MAUCC and further points out that neither of these parties license Callahan to minister. Opposition to Defendants’ Motion to Dismiss at page 14.
The defendants further argue that plaintiff has failed to meet the “acted without lawful cause” aspect of this tort under Conway v. Smerling, 37 Mass.App.Ct. 1, 12 (1994). The defendants claim that reporting the initiation of a formal complaint to other parishes is part of the disciplinary process and further allege that all the other parishes were simply told that *437 a complaint had been filed against him, which was true. However, plaintiff alleges that more than mere reporting of the initiation of charges occurred. 10 and 13 of the Complaint allege that the FCCH defendants spread rumors of “bizarre behavior” and accused plaintiff of having tampered with pledge cards, breached confidences, called the congregation “evil,” tampered with a child’s bicycle and “mailed a fake stuffed rat to the former treasurer/seminarian of the church.” As to Rev. Harper, plaintiff asserts in 16 of the Complaint that he “informed others, without a need to know, that ‘charges’ had been filed against Rev. Callahan.” (Emphasis added.) Given the standard of review at this stage, plaintiff has adequately stated a claim for unlawful interference through improper means because he alleges the defendants knowingly made false statements and took actions exclusively for the purpose of destroying Callahan’s career despite the admonition of a forum leader not to proceed with that destructive intent. See United Truck Leasing v. Geltman 406 Mass. 811, 816 (1989). Furthermore, under Ezekiel v. Jones Motor Co., Inc., 374 Mass. 382, 390 (1978), Callahan has sufficiently pled tortious interference as a result of improper motive as the defendants allegedly knowingly made false statements to others for the purpose of keeping Callahan from finding other employment. Furthermore, Count IV was brought against the FCCH Defendants and Rev. Harper, not the MAUCC, who have no religious interest in keeping plaintiff from seeking employment elsewhere. Accepting plaintiffs allegations as true for the purposes of the Motion to Dismiss, the Motion to Dismiss is denied as to Count IV.
Count V, Violation and Inducing a Violation of Right to Privacy
Beyond the subject matter jurisdiction issue, the defendants argue that asking Callahan to both submit to a doctor’s examination and for permission for the MAUCC to speak to that doctor about the examination is not sufficient to cause a violation of the right to privacy under M.G.L.c. 214, 1B. This argument belittles the professional consequences of Callahan’s refusal to comply with these demands. Defendant is asking plaintiff to sacrifice his privacy to salvage his livelihood. Thus, plaintiff has sufficiently alleged violation of his privacy right to survive the Motion to Dismiss. This Court has subject matter jurisdiction under Hiles as this is not essentially a religious dispute and, under Antioch, Alberts, and Jones, to examine the process to determine whether the MAUCC followed its own procedure in mandating the examination.
While I am skeptical that the “Inducing a Violation” aspect of Count V is not a valid cause of action, no economies to the parties will be achieved if only the “Inducing Violation” claim is dismissed. In light on my ruling as to the violation of his right to privacy, I leave resolution of this issue to a later date.
Count VI, Intentional Infliction of Emotional Distress
Although defendants claim that the allegations plaintiff has made do not meet the required level of “extreme and outrageous conduct” under Kurker v. Hill, 44 Mass.App.Ct. 184, 193 (1998), I do not accept that proposition. Defendants claim that the filing of the complaint, the resultant investigation, and the ultimate temporary suspension are not sufficiently outrageous to meet the burden. The plaintiff states that the allegations made in the complaint and incorporated by reference into Count VI, taken as a whole, do constitute extreme and outrageous conduct.[8] Considering all the facts alleged by the plaintiff and the reasonable inferences therefrom, I find that those allegations, if true, could well constitute extreme and outrageous behavior beyond all bounds of decency. As to subject matter jurisdiction, it is clear under Hiles that this Court can analyze the behaviors alleged under this Count without having to weigh religious doctrine. Accordingly, Defendants’ Motion is denied as to Count VI.
ORDER
Based on the pertinent case law, I find that this Court has subject matter jurisdiction over all six counts alleged in the Complaint. Accepting as true all facts asserted by plaintiff and drawing all reasonable inferences in his favor, the Motion to Dismiss Plaintiffs Complaint is DENIED.

 While the defendants’ motion is labeled a 12(b)(1) motion, some aspects of the motion appear to be based on 12(b)(6).

 “Civil court may not exercise jurisdiction over ‘a matter which concerns theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.’ ”

 “The First and the Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them."

 “The ‘First Amendment prohibits civil courts from intervening in disputes concerning religious doctrine, discipline, faith, or internal organization.’ ”

 “[C]ivil courts ‘must tread . . . cautiously’ in disputes involving hierarchical churches.”

 Hiles, quoting Parish of the Advent, 426 Mass. at 284, quoting Serbian E. Orthodox Diocese, 426 U.S. at 709.

 Plaintiff recounts the allegations as follows:
Callahan alleges that the FCCH defendants, motivated by spite and ill will as a result of his raising concerns over their financial improprieties and his concerns for protecting the rights of homosexual candidates for the ministry and others set out to destroy his career, even after he no longer had any affiliation with their Church. They published false, misleading and unsubstantiated accusations, which included the accusations that he tampered with *438 pledge cards, breached confidences, called tire congregation evil, tampered with a child’s bicycle and mailed a fake rat to a former treasurer/seminarian. He alleges that the resultant disciplinary process was “ad hoc and protracted" and designed to destroy his future employment [sic] and further it was not taken in accordance with any procedure but invented ad hoc. He alleges that he was not informed in sufficient time what action the defendants intended to take. Callahan alleges that the FCCH defendants falsely implied that he had a homosexual relationship with a seminarian. He alleges that the decision of the MAUCC, based upon the testimony of the FCCH defendants, requires him to undergo invasive psychological and physiological testing, forfeit all rights of confidentiality and agree to such onerous conditions for reinstatement that no one would ever hire him. He alleges that the decision implies he was suffering from Alzheimer’s disease or other neurological dysfunction.
Opposition to Defendants’ Motion to Dismiss at page 19-20 (citations omitted).